### NICOUD v. NEW YORK LIFE INS. CO.

(Supreme Court, Appellate Division, Second Department. March 1, 1912.)

INSURANCE (§ 376*)—POLICY—CHANGE BY AGENT.

> Where an application and the life insurance policy issued upon it expressly provided that no change in the contract should be binding unless reduced to writing and made or approved by certain managing officers of the company, and particular mention was made in the policy that no extension of time for paying any premium should be made otherwise than by such officers, a clerk in the medical department of the company, who had been requested by the soliciting agent to deliver the policy, had no authority to alter the contract by parol agreement and extend the time for the payment of premiums.

> [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 952–955; Dec. Dig. § 376.*]

Appeal from Trial Term, Kings County.

Action by Rose L. Nicoud against the New York Life Insurance Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

See, also, 134 App. Div. 937, 118 N. Y. Supp. 1128.

Argued before JENKS, P. J., and BURR, THOMAS, WOODWARD, and RICH, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

James H. McIntosh, for appellant.

Frank X. McCaffry (Andrew F. Van Thun, Jr., and Francis B. Mullin, on the brief), for respondent.

THOMAS, J. Plaintiff's husband applied for a policy of insurance through defendant's agent, and the policy conforming to the application was issued to him. Later he died with a premium unpaid, whereby the policy had lapsed. The court has so reformed the policy that it was in force at the husband's death, and decreed payment under it. This result was effected by changing the stipulated date for the payment of the premium from February 26th to May 20th, whereby a clause, that the policy should remain in force for 60 days after default in payment of a premium, kept it intact at the time of death. The reason for this reformation of the contract is an agreement found to have been made between plaintiff and one Kilborn in defendant's employ at the time the first premium was paid, on May 20, 1904, when the policy was delivered, that the policy took effect as of that date and held good for 1 year from that date and 60 days thereafter. The evidence is that what was contracted for was delivered, and that if Kilborn made the representations charged, he had no authority to do so, which the application and policy fully stated, whereby the assured and his wife, the beneficiary, knew the fact. And yet, with this knowledge and with the company's later notice that the next premium would become due on February 26, 1905, the assured and the plaintiff, living in Brooklyn, took no measures to reform the instrument. The assured, a traveling salesman, made, on February 26, 1904, the application through Fear, his friend and defendant's soliciting agent located at St. Louis but temporarily in New York, whereby he stipulated, among other things:

"(1) That no statements, promises or information made or given by, or to, the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on the company or in any manner affect its rights, unless such statements, promises or information be reduced to writing, and presented to the officers of the company, at the home office, in this application. * * * (3) That the insurance hereby applied for shall not take effect unless the policy is delivered to me during my lifetime and good health, and that, unless otherwise agreed in writing, the policy shall then relate back to and take effect as of the date of this application."

The policy is dated February 26, 1904, and if the fine print used for the above stipulation in the application may be criticised, the fault does not extend to the policy, which boldly states the agreement that the policy takes effect "as of the twenty-sixth day of February, nineteen hundred and four," and that the sum paid constitutes "payment for the period terminating on the twenty-sixth day of February, nineteen hundred and five, and in further consideration of the payment of a like sum on said date, and thereafter on the twenty-sixth day of February in every year during the continuance of this policy, until premiums shall have been paid for twenty years in all from the date on which this policy takes effect."

Now, who made this found agreement obliterating these stipulations in the application and policy, and substituting "May 20th" whenever the date "February 26th" appears as above? The persons were the

plaintiff, sent by the assured to pay the premium and to receive the policy, and Kilborn, who was a clerk in the medical department, and whose duty it was to arrange appointments for medical examiners to examine applicants for insurance. Kilborn had no other duty relating to defendant's business. Fear was obliged to return to St. Louis on February 28th, and asked Kilborn to obtain and to deliver several policies. Nobody applied for the Nicoud policy, and Kilborn made numerous ineffectual efforts to deliver it at Nicoud's place of business. The policy has:

"General Provisions. (1) Only the president, a vice president, a secretary, or the treasurer has power on behalf of the company to make or modify this or any contract of insurance or to extend the time for paying any premium, and the company shall not be bound by any promise or representation heretofore or hereafter made, unless made in writing by one of said officers."

And yet Kilborn, a clerk in the medical department, concerting with the assured's wife, sent to receive the policy and pay for it, undid the agreement in writing and made another by parol, and it was done by Kilborn's representation as to the time when the premium was payable. There was no misrepresentation leading to the application. There is no variance from the application in the policy. The contract expressed in the policy is the contract agreed upon. It is defendant's acceptance of Nicoud's offer. It is upset, as found, by two persons, and Kilborn at least had not even the appearance of authority to disturb it. When plaintiff went to the defendant's office, she said, as she testifies, "My husband has just taken out a policy, and I came over to get it," and when the policy was produced and identified, she said: "I came over to take that. How much is it?" That was her errand, and to that her authority was primarily directed. But something more was done because the assured's delay in taking his policy made it necessary that his present state of health must be ascertained in accord with the defendant's rule that there must be a new examination in case of non-delivery of the policy within 60 days of the first medical examination. This proceeding did not bear a semblance to a new application for a new policy, nor did any person so understand, for the policy prepared and ready for delivery under the application of February 26th was delivered, and the plaintiff knew so well what it said as to payments that she sought advice about them from Kilborn, as she says, and upon the clerk's alleged statements she relied. And yet the policy in her hands taught her and her husband in plainest terms that what Kilborn said could not be the truth, and that he had no right to say it in derogation of the contract.

The contract expressed the full intention of the insurer; it spoke clearly that intention to plaintiff and to her husband, showed each of them what contract the assured had made, and by whom and in what form it could be modified. There was not, then, mutual mistake, nor a modified contract, nor a new contract. The premium for 1905 was not paid on February 26th, or May 20th, or at any time. The defendant mailed and there was received by plaintiff a notice dated January 28, 1905, that the premium would be due February 26, 1905, and that it must be paid, and that in default of payment on the due day the policy would be forfeited and void except as stated. The plaintiff testified

that she sent the notice to Fear, who replied that he would be in New York in February and would talk it over with her, and that Kilborn upon her visiting him told her that the notice was nothing and that she did not have to pay until May. Fear and Kilborn deny such communication, but Fear states that he was in New York in February and twice had conversations with Nicoud about the February payment, and the latter promised to pay it without questioning the accuracy of the date of payment. Again, Kilborn's advice as·reported is preferred to the contract. So this contract, not only informing in its language but in fact of the assured's obligation, has suffered elisions and interpolations under the pretense of reforming it, and the decree is based on the representation of a person who in official relation and in the form of his action is absolutely excluded from authority by the very contract which the evidence is used to alter. It is urged for the respondent that the court may not review the evidence, inasmuch as it submitted certain issues to the jury, and that the appellant has not moved for a new trial. Under such rule some of the above references to the evidence would be precluded, but the respondent's discussion of the evidence prompted examination of it. However, the main facts appear in the admitted allegations in the pleadings, and the decision and several findings, whereby it should be concluded that Kilborn had no authority to modify the contract.

Judgment reversed, and new trial granted; costs to abide the final award of costs.

JENKS, P. J., and WOODWARD and RICH, JJ., concur. BURR, J., not voting.